**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| Yolanda C. S.<br><br>Plaintiff,<br><br>v.<br><br>Frank Bisignano, Commissioner of Social Security,<br><br>Defendant. | Civil No. 3:25-cv-01965 (MEG)<br><br><br><br>October 21, 2026 |

**RULING ON PENDING MOTIONS**

Plaintiff, Yolanda C. S.[1], appeals the decision of the Commissioner of Social Security ("Commissioner" or "Defendant"), denying her application for Social Security Disability Insurance (SSDI) and Supplemental Security Income (SSI). ECF No. 17. She seeks an order reversing the Commissioner's decision and remanding the case for a new hearing. ECF No. 27. The Commissioner seeks an order affirming the ALJ's decision. ECF No. 37.

For the reasons that follow, Plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing is **GRANTED (ECF No. 27)** and that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner is **DENIED. ECF No. 37.**

---

1 Pursuant to D. Conn. Standing Order CTAO-21-01, Plaintiff will be identified solely by first name and last initial throughout this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 13, 2022, Plaintiff applied for SSDI under Title II, and SSI under Tile XVI alleging disability beginning March 2, 2020. R. 247, 251. She claimed an inability to work due to the following impairments: low red blood count, sinusitis, chronic migraines, high white blood count and high blood pressure. R. 103. Her application was denied initially on February 17, 2023 and upon reconsideration on April 4, 2024. R. 145, 156. An administrative hearing was held on December 10, 2024.[2] R. 55.

On January 27, 2025, the Administrative Law Judge ("ALJ") issued an unfavorable decision. R. 31. On September 17, 2025, the Appeals Council denied the request for review, rendering the ALJ's decision the final decision of the Commissioner. R. 8. This timely appeal ensued.

ALJs are required to follow a five-step sequential evaluation process in adjudicating Social Security claims, and ALJ Alexander Borre's written decision follows that format. At Step One, he found that Plaintiff had not engaged in substantial gainful activity since March 2, 2020, the alleged onset date. R. 40. At Step Two, he found that Plaintiff suffers from the severe impairments of migraines without aura and adjustment disorder.[3] R. 40. At Step Three, he concluded "the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404 Subpart P, Appendix 1." R. 41. The ALJ determined she had the residual functional capacity ("RFC") to:

---

[2] Plaintiff appeared at the ALJ hearing *pro se* with an interpreter. Although she agreed to proceed without counsel she stated at several points during the hearing that she did not understand. R. 67, 68, 80.

[3] The ALJ also reviewed the evidence of record and identified multiple non-severe impairments, including, mild degenerative disc disease of the lumbar spine, right knee arthralgia and eosinophilia. R. 40.

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can frequently climb ramps and stairs, but never climb ladders, ropers, or scaffolds; frequently balance, stoop, kneel, and crouch; occasionally crawl; can tolerate occasional exposure to temperature and humidity extremes, vibration, and moderate noise; cannot tolerate concentrated exposure to dust, gases, and fumes; and must avoid all hazards. She can understand, remember, and carry out simple instructions, and tolerate occasional simple changes to the work routine.
>
> R. 42.

At Step Four, the ALJ determined "the claimant is capable of performing past relevant work as an industrial cleaner. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." R. 44. Finally, and in the alternative, at Step Five, relying on the testimony of a vocational expert ("VE"), the ALJ found that in addition to her past relevant work, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including machine packer, produce packer, and store laborer. R. 46. Accordingly, the ALJ determined that Plaintiff was not disabled from March 2, 2022, the alleged onset date, through January 27, 2025, the date of the decision. R. 46-47.

## II. APPLICABLE LEGAL PRINCIPLES

To be considered disabled under the Social Security Act, "a claimant must establish an 'inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.'" *Smith v. Berryhill*, 740 F. App'x 721, 722 (2d Cir. 2018) (summary order) (quoting 20 C.F.R. § 404.1505(a)). To determine whether a claimant is disabled, the ALJ follows a familiar five-step evaluation process.

At Step One, the ALJ determines "whether the claimant is currently engaged in substantial gainful activity . . . ." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)). At Step Two, the ALJ analyzes "whether the claimant

has a severe impairment or combination of impairments . . . ." *Id.* At Step Three, the ALJ evaluates whether the claimant's disability "meets or equals the severity" of one of the "Listings" – that is, the specified impairments listed in the regulations. *Id.* At Step Four, the ALJ uses a residual functional capacity assessment to determine whether the claimant can perform any of his or her "past relevant work." *Id*. At Step Five, the ALJ addresses "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's [RFC], age, education, and work experience." *Id.* The claimant bears the burden of proof at Steps One through Four. *Id.* At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *Brault v. Soc. Sec. Admin., Comm'r,* 683 F.3d 443, 445 (2d Cir. 2012) (per curiam).

In reviewing a final decision of the Commissioner, this Court "perform[s] an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). Its role is to determine whether the Commissioner's decision is supported by substantial evidence and free from legal error. "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal citations and quotation marks omitted).

A disability determination is supported by substantial evidence if a "reasonable mind" could look at the record and make the same determination as the Commissioner. *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citations and quotation marks omitted). Though the standard is deferential, "[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotation marks and citations omitted). When the decision is supported by substantial evidence, the Court defers to the

Commissioner's judgment. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

An ALJ does not receive the same deference if he or she has made a material legal error. In other words, district courts do not defer to the Commissioner's decision where "an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks omitted).

## III. DISCUSSION

Plaintiff argues that remand of this matter is required because: (1) the ALJ erred at Step Three by failing to consider whether her migraines medically equaled Listing 11.02B or 11.02D; and (2) the ALJ's findings at Steps Four and Five, that Plaintiff can perform her past work or other work in the national economy, are not supported by substantial evidence because the RFC in the decision is more restrictive than the hypothetical question posed to the VE; thus the VE's testimony is unreliable. ECF No. 28 at 7-16.

### A. Step Three

Step Three of the sequential evaluation process requires the ALJ to determine whether any of the claimant's severe impairments, alone or in combination, meets or equals an impairment that is listed at 20 C.F.R. Part 404, Subpart P, App. 1 (a "Listing"). *See* 20 C.F.R. § 404.1520(d), 416.920(d). If the claimant has an impairment that is not among the Listings, the Commissioner is instructed to compare the claimant's findings to a "closely analogous" listed impairment. *See* 20 C.F.R. § 404.1526(b)(2). The non-listed impairment is medically equivalent to a listed impairment if it is equal in severity and duration to a listed impairment. *See* 20 C.F.R. § 404.1526(a).

Headaches are not a listed impairment; however, the Commissioner has published a Social Security Ruling detailing how headache disorders should be evaluated.[4] *See* SSR 19-4p, 2019 WL 4169635 (SSA Aug. 26, 2019). Under SSR 19-4p, once a headache disorder has been determined to be a severe impairment at Step Two, the Commissioner, must determine whether the headache disorder is medically equivalent to Listing § 11.02B or D (epilepsy) either singly or in combination with another medically determinable impairment.

Here, at Step Two, the ALJ determined that Plaintiff's migraine headaches were a severe impairment. He then determined at Step Three that "[a]lthough migraines itself is not a listed impairment, the undersigned considered the potential effects that migraines has in causing or contributing to impairments in the body systems and that the combined effects of migraines with other impairments can be greater than the effects of each of the impairments considered separately (SSR 19-2p)." R. 41. The ALJ found that the "evidence of record does not reflect adverse effects of migraines on any body system to the degree the claimant would have an impairment of listing severity." *Id.* The ALJ did not consider Plaintiff's migraine headaches pursuant to Listing 11.02B or D (epilepsy).

---

4 In determining whether a claimant's impairments are equivalent to Listing 11.02B, the ALJ is to consider:

> [a] detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatments, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

SSR 19-4p, 2019 WL 4169635, at *7.

This error was not harmless. First, at step three, the ALJ should have considered Plaintiff's migraine headaches in accordance with SSR 19-4p. *See Zakrzewski v. Comm'r of the Soc. Sec. Admin.*, No. 2-25-CV-01435 (FB), 2026 WL 468885, at *6 (E.D.N.Y. Feb. 19, 2026). SSR 19-4p:

> [I]nstructs ALJs evaluating claimants with migraines that the most closely analogous listed impairment to migraines is Listing 11.02 — epilepsy. In assessing whether a migraine disorder meets or equals Listing 11.02, [SSR 19-4p] directs the ALJ to consider a number of factors...includ[ing] a detailed description from an...acceptable medical source of a typical headache event; the associated phenomena that the claimant experiences (such as premonitory symptoms and aura); the frequency of headache events; the claimant's adherence to prescribed treatment; any side effects of treatment; and any limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day.

*Id.* (quotations omitted); *see also Megan S. v. Comm'r of Soc. Sec.*, No. 25-CV-00253-HKS, 2026 WL 1481098, at *5 (W.D.N.Y. May 27, 2026); *Candy S. v. Comm'r of Soc. Sec.*, No. 1:24-CV-00702 (CDH), 2026 WL 2914173, at *5 (W.D.N.Y. Sept. 29, 2026). Rulings such as SSR 19-4p are "binding on all components of the Social Security Administration." *Banyai v. Berryhill*, 767 F. App'x 176, 178 (2d Cir. 2019) (summary order), *as amended* (Apr. 30, 2019). Here, because the ALJ found that Plaintiff's migraine headaches were severe at Step Two, he was obligated at Step Three to address the factors identified in SSR 19-4p in his decision.

As to the first factors identified in SSR 19-4p, Plaintiff points out that the record includes detailed descriptions of Plaintiff's reported typical migraine headache events with associated phenomena from acceptable medical sources. ECF No. 28 at 9 (citing R. 684-neurology consult). Migraine headache events are documented to include aura, sensitivity to light and sound, tearing and dizziness. *Id.*(citing R. 536, 684, 775, 844, 994, 1365). Next, migraine headache frequency is documented in the medical record exceeding the once per week threshold for Listing 11.02B. *Id.* (citing R. 535 (6/15/2022-nightly headaches), 528 (8/18/22-3-4 times per week), 844 (9/15/2022-

reporing daily migraine headaches); R. 775 (3/23/2023-reporting headaches with no relief of symptoms despite taking four medications), R. 993-94 (8/9/2023-reporting daily headaches with aura)). Other factors set forth under SSR 19-4, compliance with adherence to prescribed treatment, and any side effects from treatment are also demonstrated in the record. *Id.* at 9-10 (citing R. 684-reporting at neurology consult that she tried and failed various triptans in the past); R. 532 (reporting that amitriptyline made her tired and dizzy); R. 535 (prescribed and took amitriptyline); R. 528 (metoprolol); R. 684 (nortriptyline, nurtec, raglan); R. 775 (reporting not experiencing relief in symptoms despite taking four medications: nortriptyline, nurtec, metoprolol, ibuprofen and metoclopramide for nausea and vomiting); R. 994 (reporting daily headaches taking nortriptyline) and R. 1365 (reporting that Pamelor was "very strong" and caused her to worry about driving). On this basis, remand is warranted for the ALJ to consider the factors set forth in SSR 19-4p and to evaluate the medical evidence for equivalency under Listings 11.02B and D. 2019 WL 4169635, at *7.

Second, the ALJ's RFC finding fails to address many of the limitations in functioning that may occur once a migraine headache begins, as set forth in SSR 19-4p. At Step Four, the ALJ summarized some of Plaintiff's migraine-related treatment, noting that Plaintiff "reported daily headaches with throbbing holocephalic pain, often behind both eyes" with radiation to the "back of head and neck." R. 43. And, cited reports that "headaches normally start in the morning and last all day." *Id.* He cited to physical exam records showing "intact cranial nerves, normal reflexes; normal gait and finer finger movements and intact sensation." *Id.* He noted treatment consisted of "medication and Botox injections" to relieve pain with reported symptom improvement. *Id.*

The ALJ concluded that "claimants ongoing migraine, despite treatment" supported the RFC of "medium exertional level with postural and environmental limitations given the claimant's unremarkable physical exams and occasional headaches." *Id.* However, the ALJ concluded that

the claimant's migraine disorder was also evaluated under SSR 19-4p, regarding primary headache disorders" without enumerating the factors in SSR 19-4p. *Id*. Because of this conclusion, the ALJ failed to incorporate *any* limitations based on Plaintiff's migraine headaches into the RFC finding.

Plaintiff argues, and the Court agrees, that because the RFC does not account for the time Plaintiff would be off task due to her migraine disorder, it is incomplete and not supported by substantial evidence. ECF No. 28 at 11-12 ("This error was harmful because excessive time off task exceeding 15% of the workday would preclude work per the vocational expert's testimony.") (citing R. 80 (VE testifying that a person off task 15% of the workday due to migraines and/or out of work two times a month would be unemployable)). On this topic, the record includes the following evidence:

- 6/15/2022-PCP provider noted nightly migraines, bilateral accompanied by sensitivity to light and Plaintiff reported experiencing daily headaches accompanied by sensitivity to light and tearing that are not relieved by Metoprolol. (R. 535);
- 9/15/2022-reporting daily headaches with photophobia. (R. 844);
- 8/9/2023-reporting daily headaches with aura, spots and flickering lights bilateral photophobia and phonophobia. (R. 994);
- 9/22/2022-treating neurologist diagnosed migraines with aura that do not respond to various triptans and will start her on Nurtec as needed along with Reglan for nausea. (R. 684);
- 3/23/2023-Plaintiff reported migraines accompanied by sensitivity to both light and sound. (R. 775);

- 8/9/2023-reporting daily migraines with throbbing holocephalic pain, often behind both eyes radiates backwards to back of head and neck, with aura, sensitivity to light and sound, duration: all day. (R. 993-94);
- 9/14/2024-reports some improvement with Nurtec and Zofran, now experiencing 2-3 migraines per month. (R. 1358 );
- 12/20/2024-reporting medication "helps for a while then comes back, experiences auras such as flashing lights and zig zag lines". (R. 1365 ).

In addition, there is evidence in the record, that Plaintiff's provider advised her not to work or drive while taking Flexeril, R. 1042, and Plaintiff expressly reported that Pamelor was so strong that she worried about driving. R. 1365 (reporting that Pamelor "is very strong and worries her when she is driving"); R. 532 (reporting amitriptyline made her tired and dizzy and she "cannot drive with medication", and reporting "she sometimes has to miss work for medical care or because she is feeling dizzy and sick"); R. 73 (testifying that she experiences migraine headaches three times a week).

The record also documents headache events to include aura, sensitivity to light and sound, tearing and dizziness not considered as part of the RFC. R. 535, 684, 775, 844, 994, 1365. SSR 19-4 expressly identifies light sensitivity as a functional limitation associated with primary headache disorders that may require accommodations such as a darkened environment. Despite this record, the ALJ's RFC contains no limitation addressing exposure to bright light, fluorescent lighting, or similar environmental triggers. *See Kenneth H. v. Comm'r of Soc. Sec.,* No. 23-CV-6358(LJV), 2024 WL 5075613, at *4 (W.D.N.Y. Dec. 11, 2024) ("But the ALJ's analysis still fell short because the ALJ failed to consider "the limitations in functioning that may be associated with the primary headache disorder ..., such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance

that affects daytime activities, or other related needs and limitations).") (citing SSR 19-4p, 2019 WL 4169635, at *7 (Aug. 26, 2019)).

Accordingly, remand of this matter is required. On remand, the ALJ will assess Plaintiff's migraine headaches at Step Three in accordance with SSR 19-4p and Listing 11.02 B and D and consider Plaintiff's functional limitations as well as any impact those limitations may have on the RFC determination. *Kenneth H.,* 2024 WL 5075613, at *5 (finding that "the ALJ erred at step three by not addressing migraine headaches. And while the ALJ purported to do that at step four, this Court still cannot conclude that the step-three error was harmless because the ALJ did not consider the limitations in functioning associated with Kenneth's headaches.").

**IV. CONCLUSION**

For the reasons stated above, Plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing is **GRANTED** (ECF No. 27) and that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner is **DENIED.** ECF No. 37.

The Clerk of the Court will enter judgment in favor of **Plaintiff.**

This is not a recommended ruling. The parties consented to the jurisdiction of the undersigned Magistrate Judge, who may therefore direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. ECF No. 29. Appeals may be made directly to the appropriate United States Court of Appeals. *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c). It is so ordered.

*/s/ Maria E. Garcia, USMJ*

Hon. Maria E. Garcia
United States Magistrate Judge